RE: *Allen De La Cruz v. County of Contra Costa, et al.*
United States District Court Case No. TBD

---

# EXHIBIT A

Electronically Filed Superior Court of CA County of Contra Costa 8/3/2026 9:08 AM By: T. Schrader, Deputy

ALLEN DE LA CRUZ
2730 W. Tregallas Rd
Antioch, CA 94509
(925) 698-6858

Plaintiff, Pro Se

Per local Rule, This case is assigned to Judge Hiramoto, Joni T., for all purposes.

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF CONTRA COSTA**

| | |
|---|---|
| ALLEN DE LA CRUZ,<br>Plaintiff,<br>vs.<br>COUNTY OF CONTRA COSTA, a government entity;<br>CONTRA COSTA COUNTY SHERIFF'S OFFICE, a government entity;<br>and DOES 1 through 100, inclusive,<br>Defendants. | **Case No. ~~[CASE NUMBER]~~** C26-02620<br>**COMPLAINT FOR DAMAGES:** |

**1. FMLA AND CFRA INTERFERENCE AND RETALIATION**

(29 U.S.C. § 2615; Gov. Code § 12945.2)

**2. FEHA RETALIATION, HARASSMENT, AND CONSTRUCTIVE TERMINATION**

(Gov. Code §§ 12940(h), 12940(j))

**3. WHISTLEBLOWER RETALIATION**



Processed by Court on 8/7/2026 12:04 PM

(Cal. Labor Code § 1102.5)

**4. RACIAL DISCRIMINATION AND DISPARATE TREATMENT**

(Gov. Code § 12940(a); 42 U.S.C. § 1981)

**5. NEGLIGENCE AND WILLFUL NEGLIGENCE**

**6. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**7. FAILURE TO PREVENT HARASSMENT, DISCRIMINATION, AND RETALIATION**

(Gov. Code § 12940(k))

**8. INJUNCTIVE AND DECLARATORY RELIEF**

(Cal. Code Civ. Proc. §§ 526, 1060)

**DEMAND FOR JURY TRIAL**

---

Plaintiff, ALLEN DE LA CRUZ, hereby demands a trial by jury, and based on information and belief, complains, and alleges as follows:

**THE PARTIES**

1. At all times relevant hereto, Plaintiff ALLEN DE LA CRUZ (hereinafter "De La Cruz" or "Plaintiff") was and is a resident of Contra Costa County, California, employed by Defendant COUNTY OF CONTRA COSTA ("Defendant" or the "County") and Contra Costa County Sheriff's Office ("CCCSO") (collectively, "Defendants") as a Sheriff's Deputy at the Martinez Detention Facility (MDF) from approximately April 28, 2015, until his medical separation, the operative date of which is June 23, 2025, as corrected by CCCERA.

2. Plaintiff is informed and believes and thereon alleges that, at all times relevant hereto, Defendant COUNTY OF CONTRA COSTA is a political subdivision of the State of California and a covered employer under FEHA, CFRA, FMLA, and the California Whistleblower Protection Act. Defendant CONTRA COSTA COUNTY SHERIFF'S OFFICE is a department of the County and is not a separate legal entity; it is named separately for identification purposes. At all times pertinent hereto, Defendant County owned, controlled, and operated the law enforcement agency known as the Contra Costa County Sheriff's Office.

3. Plaintiff is informed and believes and thereon alleges that Defendants DOES 1 through 100, inclusive, and each of them, at all times relevant hereto, were individuals employed by or associated with Defendants whose conduct, as described herein, directly caused injury to Plaintiff. Known Doe Defendants include:

Doe 1, Sergeant Brian Filice: Plaintiff's direct supervisor; committed FMLA interference, retaliation, intimidation, retaliatory assignments, work demands during physician-ordered medical leave, and authorized an intimidating home welfare check.

Doe 2, Lieutenant Landy Hernandez (formerly Sergeant): denied Plaintiff's federally protected FMLA leave three times within nine days on three different and shifting pretextual grounds.

Doe 3, Sergeant Michael Parrish: denied Plaintiff's Emergency Sick Leave; made demeaning and intrusive comments about Plaintiff's family, and healthcare decisions.

Doe 4, Lieutenant Christina Holder: dismissed Plaintiff's formal safety complaint on

April 26, 2023, with actual knowledge of dangerous understaffing, fifteen days before a foreseeable career-ending attack on Plaintiff.

Doe 5, Sergeant Ashley Vallis: Plaintiff's direct supervisor at relevant times; privately acknowledged the legitimacy of Plaintiff's safety and assignment complaints while taking no corrective action.

Doe 6, Lieutenant Brian Holland (formerly Sergeant): served as union representative at the April 26, 2023 meeting; took no action on Plaintiff's behalf despite witnessing protected whistleblowing activity.

Doe 7, Lieutenant Anthony Rossi (formerly Sergeant): informally acknowledged Plaintiff's meal break complaint was legitimate while avoiding creation of a formal record.

Does 8 through _ are additional individuals whose conduct reflects Defendants' pattern of preferential treatment of non-Asian employees, whose identities are known to Defendants, and who will be further identified through discovery.

4. The true names and capacities of Defendants DOES 1 through 100, and each of them, are unknown to Plaintiff at this time. Plaintiff will file DOE amendments and/or seek leave of court to amend this complaint to assert the true names and capacities of these Defendants when ascertained. Each Defendant designated as a DOE was responsible, in some manner, for the injuries and damages hereinafter alleged, and Plaintiff's damages were proximately caused by their conduct. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as Does 1 through 100, inclusive, and therefore sues those Defendants by such fictitious names pursuant to California Code of Civil Procedure § 474. Plaintiff will amend this complaint to allege their true names and capacities when

ascertained through discovery.

5. At all times material herein, Defendants, and each of them, were the agents, servants, or employees, or ostensible agents, servants, and employees of each other Defendant, and as such, were acting within the course and scope of said agency and employment or ostensible agency and employment, except on those occasions when Defendants were acting as principals, in which case, said Defendants, and each of them, were negligent in the selection, hiring, training, supervision, and retention of the other Defendants. Each Defendant acted in concert with and ratified the conduct of all other Defendants.

6a. Each of the Defendants was the co-tortfeasor of each of the other Defendants in doing the things hereinafter alleged.

6b. Plaintiff is further informed and believes that at all times relevant hereto, Defendants, and each of them, acted in concert and in furtherance of the interests of each other Defendant. The conduct of each Defendant combined and cooperated with the conduct of each of the remaining Defendants so as to cause the herein described incidents and the resulting injuries and damages to Plaintiff. No act of retaliation, interference, or discrimination described herein was carried out by a single actor in isolation -- each was enabled, ratified, or left unaddressed by the institutional authority of the County and CCCSO, making every named Defendant jointly responsible for the full scope of harm sustained by Plaintiff. The conduct alleged herein reflects a pattern and practice of institutional retaliation -- a coordinated, escalating campaign in which multiple supervisory actors participated across a period of years, each act building upon the last in a deliberate effort to punish Plaintiff's exercise of protected rights and force his separation from employment.

## VENUE AND JURISDICTION

6. At all relevant times, Defendants, and each of them, resided and/or had their principal place of business in the County of Contra Costa, State of California. All wrongful conduct alleged herein occurred in the County of Contra Costa, State of California. At all relevant times hereto, the conduct at issue was part of a continuous and ongoing pattern of behavior carried out by Defendants, and each of them, acting in concert.

7. This Court has subject matter jurisdiction pursuant to California Government Code § 12965 (FEHA), California Labor Code § 1102.5 (whistleblower retaliation), and Government Code § 12945.2 (CFRA). This Court has concurrent jurisdiction over Plaintiff's federal FMLA claims pursuant to 29 U.S.C. § 2617.

8. Venue is proper in Contra Costa County pursuant to California Code of Civil Procedure § 395 because all events giving rise to this action occurred within this County, Plaintiff was employed within this County, and all Defendants reside or conduct business within this County.

**GOVERNMENT CLAIMS ACT NOTICE**

9. The most recent adverse action occurred on June 16, 2026. Plaintiff has until December 16, 2026 to present a government tort claim pursuant to Government Code § 911.2 covering the Negligence and IIED causes of action, Plaintiff presented a government tort claim to the County of Contra Costa on or about July 27, 2026, within the time required by Government Code § 911.2. Upon rejection or deemed rejection, Plaintiff will file an amended complaint reflecting compliance with Government Code § 945.4 before seeking any ruling on those causes of action. Plaintiff's FEHA, CFRA, FMLA, and Whistleblower causes of action are exempt from the Government Claims Act pursuant to Government Code § 905(a). All common law tort damages are independently

recoverable as parasitic damages through Plaintiff's exempt causes of action, as further alleged in paragraph 72 herein.

**NOTICE REGARDING WORKERS' COMPENSATION AND JURISDICTIONAL SEPARATION**

10. This civil action expressly excludes any claim under Cal. Labor Code § 132a; any such claim is being or will be pursued separately before the Workers' Compensation Appeals Board. The claims herein are not preempted by workers' compensation exclusivity because: (a) Plaintiff's FMLA and 42 U.S.C. § 1981 claims are federal rights wholly independent of California's workers' compensation framework; (b) Plaintiff's FEHA, CFRA, and whistleblower claims arise from unlawful discriminatory conduct, not a compensable workplace injury, and are therefore not subject to workers' compensation exclusivity; (c) Plaintiff's negligence and IIED claims fall within the intentional tort exception to Cal. Labor Code § 3602, which preserves civil liability where an employer's conduct is deliberate, targeted, and exceeds the risks inherent in the employment relationship; and (d) dual jurisdiction over workers' compensation and civil employment claims is expressly permitted under California law where the claims arise from distinct legal duties.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

11. Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC) in or about April 2024, and filed a separate complaint with the California Civil Rights Department (CRD) in or about August 2024. The CRD issued a Notice of Case Closure and Right to Sue on August 4, 2025 (CRD Case No. 202408-25684305). This Complaint is filed within one year of that notice, consistent with the August 4, 2026 deadline under Government Code § 12965.

## FACTUAL ALLEGATIONS

## BACKGROUND

12. At all relevant times, Plaintiff Allen De La Cruz was employed as a Sheriff's Deputy at the Martinez Detention Facility (MDF), hired on approximately April 28, 2015. Throughout his employment, Plaintiff engaged in protected activities including asserting FMLA and CFRA rights, reporting unpaid overtime, reporting meal break violations, and formally disclosing safety violations under the County's active federal Consent Decree, a federal court order governing staffing and conditions of confinement at the MDF. Each time he did, Defendants punished him for it. Plaintiff still receives medical and psychological treatment for the injuries and emotional distress caused by Defendent's unlawful conduct.

13. Beginning in July 2021 and continuing through his career-ending injury in May 2023 and beyond, Plaintiff was subjected to a continuous and escalating pattern and practice of interference, retaliation, disparate treatment, and deliberately unsafe working conditions -- a systemic institutional course of conduct, not a series of isolated incidents, in which each successive retaliatory act was enabled and ratified by the County's failure to investigate, discipline, or correct the supervisors responsible. This pattern constitutes a continuing violation rendering all acts timely and actionable, extending through at least June 16, 2026. A series of sufficiently related retaliatory acts constitutes a single violation for statute of limitations purposes, with the limitations period running from the last act in the series rather than the first. Acts within this pattern include: (a) three pretextual FMLA interferences within nine days (December 2021); (b) Failure to reimburse sick hours (January 2022) (c) retaliatory reassignment to the facility's high risk detention assignments upon return from FMLA leave (October 2022); (d) dismissal of Plaintiff's formal safety complaint ( April 26, 2023); (e) failure to take any corrective action in the

fifteen days following Plaintiff's formal safety complaint, directly resulting in Plaintiff 'scareer-ending attack on May 11, 2023; (f) demands for work performance while on physician -ordered medical leave (December 2023); (g) an intimidating home welfare check (January 2024); (h) litigation retaliation through a Pitchess Motion during deposition (July 2025). (i) a fraudulent separation date in a sworn affidavit (June 2026).

**FIRST FMLA BABY BONDING LEAVE (2021)**

14. On July 13, 2021, Plaintiff notified Human Resources of his intent to take future FMLA leave. On September 1, 2021, he provided notice to Operations Sergeant Michael Parrish of his intent to take FMLA baby bonding leave. On September 10, 2021, he emailed Payroll regarding unpaid overtime. On September 14, 2021, he emailed Human Resources regarding Emergency Sick Leave to quarantine before his child's birth. Plaintiff is in possession of communications and will make them available in discovery. Each communication constituted protected activity under applicable federal and state law, and each triggered Defendants' statutory obligation -- individually and collectively -- to refrain from interference, restraint, or denial of those rights under 29 U.S.C. § 2615 and Government Code § 12945.2. The failure of any one Defendant to intervene and prevent another Defendant's unlawful conduct renders each Defendant jointly liable for the resulting harm.

15. On September 21, 2021, Sgt. Parrish summoned Plaintiff to his office. Parrish stated he had gotten "the big wigs in payroll worked up" and denied Plaintiff's Emergency Sick Leave request, making statements in substance that Plaintiff's family circumstances surrounding the birth of his child did not qualify him for the leave he had requested. Because the need for Emergency Sick Leave was due to hospital visitation policy, Plaintiff was required only to provide notice as soon as practicable under the circumstances -- an obligation Plaintiff satisfied by communicating directly to his supervisor. Parrish's denial was therefore unlawful on its face. This was the immediate

supervisory response to Plaintiff's protected activities. The temporal proximity between Plaintiff's protected communications and Sgt. Parrish's retaliatory summons is itself sufficient to raise an inference of retaliatory intent under established California and federal law.

16. Plaintiff returned from his initial FMLA leave on November 8, 2021. An Absence Request Form (ARF) covering October 5, 2021 through December 23, 2021 -- a period of continuous leave Plaintiff had explicitly declined to take -- was filled out by a sergeant without Plaintiff's knowledge or authorization of the end date entered on that form. Defendants later weaponized this unauthorized ARF as a pretext to deny Plaintiff's December 2021 leave request -- a textbook example of an employer manufacturing its own procedural barrier and deploying that barrier against the very employee whose rights it was designed to frustrate.

**THREE DENIALS IN NINE DAYS (DECEMBER 2021)**

17. What followed was a nine-day sequence of three separate denials of the same federally protected leave, each on a different and shifting pretextual ground. On December 1, 2021, Lt. Hernandez denied Plaintiff's FMLA leave for December 20 through December 23, 2021, claiming too many deputies had signed up for vacation. Plaintiff was not requesting vacation -- he was asserting federal FMLA rights, which an employer may not condition on vacation availability. 29 C.F.R. § 825.220(c) expressly prohibits applying vacation-count restrictions to FMLA leave. To the extent any portion of Plaintiff's December 2021 leave needs were unforeseeable, 29 C.F.R. § 825.303 further prohibited Defendants from denying leave on the basis of insufficient advance notice -- the employer bears the burden of showing the employee failed to provide timely notice under the circumstances, a burden Defendants cannot satisfy given that Plaintiff communicated each leave request directly to his supervisory chain. Additionally, Department practice permitted up to five deputies to be off on vacation per week;

Plaintiff's leave would have been fourth.

18. On December 3, 2021, Lt. Hernandez denied the leave a second time, claiming it had never been formally approved. No formality requirement exists in department policy, the Memorandum of Understanding (MOU), or FMLA guidelines. On December 6, 2021, an HR representative confirmed Plaintiff's leave period in question was protected. Critically, Sgt. Parrish had already acknowledged Plaintiff's designated leave dates on September 20, 2021 -- months before the December denials -- This email, predating each December denial by nearly three months, is direct evidence that supervisory personnel had resolved the leave request internally. Every denial that followed was therefore a deliberate act of interference against leave already acknowledged -- not an administrative oversight. An employer's internal acknowledgment that leave is approved, followed immediately by a renewed denial, is not an administrative error -- it is intentional obstruction of a federally protected right.

19. On December 9, 2021, Lt. Hernandez denied the leave a third time, citing "confusion," that no Absence Request Form(ARF) had been submitted. An ARF had in fact already been submitted, covering the exact dates at issue. Plaintiff met the requirements for protected FMLA leave (medically certified reason, employer notice). Defendants understood he was asserting his right to protected leave. Each denial was pretextual on its face. The leave was ultimately approved, confirming Plaintiff was entitled to it all along -- and that every prior denial/interference had been unlawful. An employer that cannot settle on a single consistent reason for its conduct has no legitimate reason at all. Each shifting justification is independently pretextual -- and collectively, the three denials on three different grounds across nine days constitute direct evidence that no legitimate reason existed at any point. Plaintiff cc'd former Union President in the email chain, Plaintiff received no response from the Union. Plaintiff is in possession of communications and will make them available in discovery.

20. In their written response to the CRD, Defendants characterized Plaintiff's return to work on November 8, 2021 as a return "early" -- implying his leave was incomplete or improperly terminated. This characterization is false and contradicted by Defendants' own records. Plaintiff's FMLA leave request, communicated directly to Sgt. Parrish via email, specified an intended return date before the 2.5-month leave period that a sergeant had unilaterally entered on the ARF without Plaintiff's knowledge or authorization. Plaintiff never requested 2.5 months of continuous leave. Plaintiff also communicated to his direct supervisor the return date of November 8, 2021. His return on November 8, 2021 was precisely consistent with the leave period he had communicated. Sgt. Parrish himself acknowledged and accepted the leave schedule in his September 20, 2021 email response, -- confirming supervisory understanding and acceptance of Plaintiff's designated leave. period. Defendants then represented to the CRD that no FMLA interference had occurred. That representation is directly contradicted by Plaintiff's documentary email communications, which establish that: (a) the leave dates were clearly communicated and acknowledged; (b) the ARF with unauthorized through date was filled out by a sergeant -- not Plaintiff -- for a period Plaintiff never requested; and (c) supervisors proceeded to deny that very leave three separate times on three different pretextual grounds. Plaintiffs FMLA leave was made conditional upon him finding staffing for the time. The email communications are in Plaintiff's possession and will be produced in discovery.

**COVID-19 QUARANTINE AND UNREIMBURSED SICK TIME (2022)**

21. From January 10 through January 19, 2022, Plaintiff was placed on mandatory COVID-19 quarantine. Contra Costa County Risk Management representative Richard Gamoras confirmed Plaintiff's 58.5 hours of sick time would be reimbursed. Those hours were never reimbursed. Defendants later weaponized these unreimbursed hours as the basis for a punitive threat against Plaintiff -- converting a debt Defendants owed to Plaintiff into a disciplinary weapon wielded against him. Plaintiff is in possession of

communications and will make them available in discovery.

**MEAL BREAK VIOLATIONS (JULY 2022)**

22. In July 2022, A deputy contacted Plaintiff about not getting a meal break, Plaintiff also dealing with the same issue, reported meal break violations to Union Representative Lt. Anthony Rossi (then Sergeant) the very next day, in the presence of several deputies. Lt. Rossi agreed the complaint was "a legitimate gripe," sent a deputy to apoligize to Plaintiff, avoiding the creation of any formal record and duty of representing the interests of Union members.

**SECOND FMLA BABY BONDING LEAVE AND RETALIATION (2022)**

23. On August 22, 2022, Plaintiff emailed Lt. Hernandez and Sgt. Filice asserting his right to unpaid FMLA baby bonding leave from September 12 through October 6, 2022. On August 23, 2022, Sgt. Filice approached Plaintiff at his work post and told him he could not take the leave unpaid, pressing Plaintiff to substitute paid leave in its place. Plaintiff asserted that FMLA documentation & department policy allow for time off to be unpaid. Filice replied with "that's how it was when i took my leave" or something to that affect. The leave was approved the next day. Pressuring an employee to use paid leave instead of unpaid FMLA leave is expressly prohibited by 29 U.S.C. § 2615 and 29 C.F.R. § 825.700(a). An employer may not use an employee's leave preferences as a mechanism to discourage or delay the exercise of FMLA rights.

24. On September 6, 2022, exactly six days before Plaintiff's FMLA leave was scheduled to begin on September 12, 2022, Sgt. Filice came to Plaintiff's work assignment carrying a folder containing copies of Plaintiff's sick time records for several years of his employment and told Plaintiff: "We can make a case for sick time abuse. " Plaintiff was left puzzled as Sgt. Filice's previous interaction was encouraging the use of sick/vacation time. The date stamp on the sick time records post dates Plaintiff 's August 22, 2022 FMLA leave request -- establishing that Filice compiled the disciplinary file after Plaintiff had formally exercised his FMLA rights. These records

are in Plaintiff's possession and will be produced in discovery. This constitutes direct, documentary evidence of deliberate retaliation. A supervisor who compiles a disciplinary file before an employee has formally exercised FMLA rights has disclosed his true purpose: not to address legitimate workplace concerns, but to punish the exercise of federal rights.

**RETALIATORY ASSIGNMENTS UPON RETURN FROM FMLA LEAVE (2022-2023)**

25. Plaintiff returned from FMLA leave on approximately October 10, 2022. During this time, Plaintiff ranked second in seniority on his team, below only one other deputy. Immediately upon his return, Sgt. Filice assigned Plaintiff to high-risk detention assignments (B and C Modules) -- assignments typically given to newer deputies or those being informally disciplined -- stripping Plaintiff of the A and E Module assignments he had held before leave, in direct violation of his right to reinstatement under 29 U.S.C. § 2614(a)(1) and Government Code § 12945.2. These assignments were punitive and as a direct result, Plaintiff suffered significant emotional distress and reputational harm.

26. On or around January 2023, Plaintiff changed shifts in hopes to relieve himself of some of the retaliatory treatment. On this new team Plaintiff was the sixth most senior deputy on a team of fourteen. All deputies above him in seniority were Caucasian and had their seniority honored in assignment (none of them were assigned to the high risk detention assignments). Plaintiff's was not. At least two Caucasian deputies of similar experience ranked below Plaintiff in seniority, also received preferential treatment in assignments(rarely working high risk detention assignments, and one not working them at all). Assignment rosters from November 2022 and January 2023, in Plaintiff's possession, confirm the racial disparity. On at least four separate occasions, deputies independently and without solicitation spoke to Plaintiff corroborating the retaliatory and discriminatory nature of his assignments. Identities of these deputies and the substance of each statement will be disclosed indiscovery. Additionally, at least two separate peace officers, to include one deputy employed at the MDF, independently and without

solicitation sent Plaintiff written communications corroborating the retaliatory nature of his assignments, including one received on November 3, 2022, and a second received on May 10, 2023 -- one day before Plaintiff's career-ending injury. Communications to be produced in discovery, describe Plaintiff's work assignments as "rotten spots" and "shitty details."

27. On or about December 2022, before Plaintiff changed teams, Plaintiff confronted Sgt. Filice directly about the assignment changes. When confronted, Filice stated, or words to that effect: "I'm just doing what I've been doing," Plaintiff challenged this, and Sgt. Filice replied "Well, that's just what I decided to do" -- confirming that the reassignment was a deliberate personal decision, not the product of any legitimate operational policy or staffing need -- a pretextual rationale that Defendants later attempted to replace with two mutually inconsistent justifications to the CRD, neither of which was reflected in Plaintiff's own performance evaluations. Filice subsequently recorded in Plaintiff's official end of year performance evaluation that Plaintiff "did not complain about his assignments" -- a false statement that eliminated the documentary record of Plaintiff's objections from his official employment file. The falsification of a personnel record to suppress evidence of protected activity is an independent act of retaliation and obstruction. Defendants later submitted two mutually inconsistent justifications to the CRD for these retaliatory assignment decisions -- an initial maturity and experience rationale, later shifted to an inmate rapport and grievance rationale -- each directly contradicted by Plaintiff's own performance evaluations prepared by Defendants themselves. An employer that cannot maintain a consistent reason for its adverse employment decisions has, by that inconsistency alone, provided direct evidence of pretext. Plaintiff is in possession of employment evaluations, none citing issues with maturity, experience, or ability to manage specialty inmates; These items will be produced in discovery.

28. On approximately February 16, 2023, Plaintiff documented that Defendants had made his working conditions so intolerable he nearly resigned, writing: "Almost to the point where they were pushing me out." This contemporaneous statement is direct evidence that Defendants' sustained campaign of retaliation had, by February 2023, already crossed the objective threshold for constructive discharge -- a reasonable person in Plaintiff's position would have felt compelled to leave. Sgt. Vallis subsequently acknowledged the legitimacy of Plaintiff's complaints by reassigning him for the day but also told Plaintiff he would continue to work the high-risk detention assignments (B and C Modules) with no justification. The ongoing humiliation and loss of professional standing inflicted severe emotional distress, anxiety, and aprofound loss of confidence in career and personal life.

## CONSENT DECREE VIOLATIONS, WHISTLEBLOWER DISCLOSURE, AND CAREER-ENDING INJURY (2023)

29. In August 2020, the Contra Costa County Board of Supervisors approved expenditure of approximately $2 million in federal CARES Act funds, as publicly disclosed by the Board of Supervisors, to hire twenty-four new Sheriff's deputies to staff the MDF in compliance with the County's active federal Consent Decree. Despite this public commitment and the expenditure of funds designated to remedy Consent Decree staffing deficiencies, Plaintiff was routinely assigned to work the facility's most dangerous modules without adequate support years later. This diversion constitutes independent evidence of willful disregard for the safety obligations imposed by federal consent decree, and is directly relevant to both the negligence and punitive damages theories in this action.

30. On April 26, 2023, Plaintiff was assigned to a high-risk detention assignment (B-Module) and became inundated with competing tasks, including supervising inmate

recreation time, preparing inmates for court transport, preparing inmates for facility transfer, and gathering inmates for professional visits. A psych doctor called to enter the module; Plaintiff advised him that a better time would be when two deputies were present, a determination based on safety and the timing constraints of simultaneous facility needs (recreation lockdown, meal service, inmate count, and pill call) that were to follow immediately after duties previously mentioned. The psych doctor sent a complaint to Lt. Holder regarding Plaintiff's scheduling of his entry. Lt. Holder called Plaintiff over the phone while Plaintiff was conducting pill call with a nurse. Plaintiff advised Lt. Holder that if a conversation needed to be had, now was not a good time, as Plaintiff was actively in the performance of taking on competing duties.

31. Several hours later, Lt. Christina Holder and Sgt. Ashley Vallis called Plaintiff into a meeting framed as a "time management" review. Plaintiff disclosed to them that the County's failure to meet sworn deputy staffing requirements under the active Consent Decree, was creating an insurmountable workload for Plaintiff, working the busiest modules alone or without adequate support. This constituted protected whistleblowing under California Labor Code § 1102.5(b). The Consent Decree is a federal court order. Plaintiff's disclosure was legally protected the moment he made it. Plaintiff noticed a shift in the conversation towards suggesting Plaintiff had performance issues, Plaintiff told Lt. Holder, "I am not one of the lazy ones," and Lt. Holder affirmed this by replying "I know, I've heard of your work ethic." Lt. Holder continued on about Plaintiff's time management issues, This veiled threat of disciplinary action aimed at Plaintiff's performance set the stage for Plaintiff's invocation of his union representation rights.

32. Plaintiff invoked his right to have a Union Representative present. Defendant Lt. Brian Holland(sergeant at the time) joined the meeting in his capacity as a Union Representative. Lt. Holder continued with hostility, dismissing Plaintiff's safety concerns, making contradictory statements about available staffing resources, and implicitly

acknowledging the understaffing conditions Plaintiff had just reported, while simultaneously refusing to take any corrective action. Specifically, Lt. Holder stated, or words to that effect: "All you gotta do is key a door, it takes one second, man" -- dismissing Plaintiff's safety concerns about simultaneous competing module duties; "You only requested a union rep so you can feel good about yourself, which is your right, but not in this particular scenario, is that right Sgt. Holland?" or words to that effect -- minimizing the significance of Plaintiff's Union representation invocation in the presence of Union Representative Sgt. Holland; Plaintiff looked towards Sgt. Holland in an attempt to get him to engage, Sgt. Holland remained silent. Lt. Holder continued "I understand you guys are short on escorts," or words to that effect -- an acknowledgment of known understaffing made in the same meeting in which she dismissed Plaintiff's safety complaint. Lt. Holder concluded the meeting by criticizing Plaintiff's performance pertaining to his time management, stating or words to that effect: "You really need to work on your time management, you seemed really stressed out up there" -- fifteen days before a career ending attack caused by the exact workload conditions Plaintiff had just complained about. Sgt. Brian Holland witnessed the dismissive conduct, the contradictory statements made by Lt. Holder, and Plaintiff's second protected whistleblowing disclosure, but took no action on Plaintiff's behalf. Sgt. Holland's failure to advocate for Plaintiff in that meeting constituted a breach of his duty of fair representation under the Meyers-Milias-Brown Act, Government Code § 3500 et seq., which requires union representatives to represent members fairly, in good faith, and free from conflict of interest. Under Government Code § 3506.5, employee organizations and their representatives are expressly prohibited from restraining, coercing, or permitting conduct that undermines a member's right to meaningful representation. Sgt. Holland's simultaneous role as an aspiring command-level witness to the retaliatory conduct and as Plaintiff's union representative created a direct, irreconcilable conflict of interest -- a conflict Sgt. Holland never disclosed to Plaintiff and never resolved by recusal or by ensuring Plaintiff received unconflicted representation. Sgt. Holland's presence at the meeting was not

representation -- it was institutional window dressing that served Defendants' interests while depriving Plaintiff of the advocacy to which he was legally entitled. No corrective action was taken by any supervisor present. A supervisor who receives a whistleblower safety report and responds with hostility has communicated to all subordinate supervisors that safety complaints will be dismissed -- creating the precise institutional environment in which the May 11, 2023 attack became inevitable.

33. Prior to May 11, 2023, management had directed Plaintiff to permit medical and mental health staff access to his module at all times, stripping Plaintiff of his discretionary duty. When Plaintiff had previously raised concerns about allowing mental health staff into an already busy and volatile module environment without adequate support, Lt. Holder's dismissive response, along with the impotent DSA representation, made it clear that refusal would result in adverse employment action -- a directive that became the centerpiece of the April 26, 2023 meeting. As of May 11, 2023, Plaintiff was operating under a direct supervisory instruction to permit medical/mental health staff entry regardless of competing tasks, and believed that refusal would be met with further adverse action.

34. On May 11, 2023, fifteen days after Plaintiff's safety complaint was dismissed, Plaintiff was assigned to work a high-risk detention assignment (C-Module), under the simlar conditions described in paragraph 30, when a Psych Nurse called to enter the module. Complying with Lt. Holder's directive and in fear of further adverse employment action, Plaintiff allowed the Psych Nurse to enter the module. While escorting the nurse around the module, an inmate became agitated because Plaintiff was too busy to assist him. Plaintiff directed the nurse to exit. Plaintiff was subsequently attacked by the inmate and suffered multiple career-ending injuries. Following the attack, the County began staffing those same modules with two deputies -- a direct institutional admission that the prior single-deputy conditions were objectively unsafe, that the injury was foreseeable, and that it was preventable. This post-attack correction is also evidence of deliberate indifference: the County possessed the means and resources to correct the dangerous conditions before the attack and consciously chose

not to act despite Plaintiff's formal report fifteen days earlier. Documentary evidence, including a written communication from an operations sergeant requesting additional staffing for those specific modules, constitutes a binding institutional admission under California Evidence Code § 1220 that the risk was known to management before the attack and that the attack was preventable. This evidence will be produced in discovery.

**POST-INJURY RETALIATION AND INTIMIDATION (2023-2025)**

35. Following the attack, Plaintiff was placed off work on physician orders. On December 22, 2023, Sgt. Filice left Plaintiff a voicemail and sent Plaintiff an email demanding Plaintiff perform work duties, stating in substance that Plaintiff had "a duty to respond to a work supervisor when you are out on work comp" or words to that effect -- in direct contravention of his physician -ordered restrictions and without any lawful basis in department policy, the MOU, or applicable law. On approximately January 25, 2024, Sgt. Filice dispatched two armed Sheriff's deputies to Plaintiff's personal residence to conduct a welfare check, responding deputies stated "Sergeant hasn't been able to reach, so we got a call to respond ." Plaintiff emailed Filice on January 26, 2024, documenting his objections to this intimidation, Plaintiff cited a duty to his own health and unwanted stress Filice was causing. Filice did not respond to Plaintiff's email. Facility commander took responsibility for welfare check, citing assigned adjustor not being able to reach plaintiff, although adjustor had full knowledge of plaintiff being placed off of work and all scheduled treatments. The facility commander shifting responsibility for the welfare check, while responding deputies cited a communication issue with a sergeant, establishes that there was not a legal basis for the welfare check. The forced contact is another marker of the retaliatory pattern Plaintiff dealt with for years.

**FRAUDULENT SEPARATION DATE AND FAILURE TO PROVIDE NOTICE (2025)**

36. Defendants used Plaintiff's last day in pay status -- February 19, 2025 -- as his official date of separation and memorialized this false date in a sworn affidavit submitted to the Contra Costa County Employees' Retirement Association (CCCERA). Plaintiff was

never notified of his separation until on or about June 16, 2026. CCCERA subsequently corrected the separation date to June 23, 2025. Despite this correction by an independent governmental body, Defendants maintained the false date of February 19, 2025 in their sworn affidavit. After CCCERA followed up with Plaintiffs concerns with the conflicting dates, Defendants advised that an updated affadavit would be sent out, and instead sent an updated separation letter. The use of Plaintiff 's last day in pay status as his official separation date - - rather than his actual separation date as corrected by an independent governmental body -- is a pretextual manipulation of administrative records designed to deprive Plaintiff of benefits continuity, retirement accrual, and due process rights. Submission of a materially false date in a sworn document, with actual knowledge of its falsity, constitutes fraud under California Civil Code § 1572. The deliberate use of a false separation date, after an independent body had corrected it and without ever notifying Plaintiff, deprived Plaintiff of benefits continuity, health insurance, retirement accrual, and due process rights.

**PITCHESS MOTION AND LITIGATION RETALIATION (2024-2025)**

37. Plaintiff participated in three Workers' Compensation depositions. During his second deposition on September 12, 2024, Defendants' attorney attempted to question Plaintiff about his pending CRD complaint, which Plaintiff identified as privileged by virtue of the ongoing governmental investigation. Defendants' attorney then stated that Plaintiff could be compelled to speak about the pending CRD complaint. During his third deposition on July 24, 2025, Defendants' attorney again probed the substance of Plaintiff's employment complaint and disclosed the initiation of a Pitchess Motion targeting Plaintiff. Pitchess Motions are a law enforcement personnel records mechanism with no recognized basis in accepted Workers' Compensation proceedings. The current President of the Deputy Sheriffs' Association confirmed in writing that the behaviors directed at Plaintiff were concerning. This cross-proceeding conduct was a fishing expedition, designed to chill Plaintiff's pursuit of his civil rights claims and to signal that continued litigation would be met with escalating adverse consequences. It is independently actionable under California

Labor Code § 1102.5 and Government Code § 12940(h).

**DEFENDANTS' FALSE AND CONTRADICTORY STATEMENTS TO THE CRD**

38. In response to Plaintiff's CRD complaint, Defendants submitted a Position Statement containing representations that were materially false, shifting, and internally contradictory, each admissible as party admissions under California Evidence Code § 1220. Specifically, Defendants' Position Statement contained multiple materially false and internally contradictory representations across multiple independently verifiable points, each admissible as a party admission under California Evidence Code § 1220. Most notably, in two separate submissions to the same CRD investigator, Defendants identified Plaintiff's pre-leave assignments as different modules -- one submission identifying C-Module just once, the other identifying D and A Modules -- a direct self-contradiction establishing that the high-risk detention assignments (B and C Modules) were a post-return retaliatory change, not a pre-existing assignment. The remaining contradictions, each supported by documentary evidence in Plaintiff's possession, will be fully set forth in discovery. These multiple contradicted representations, each admissible as a party admission, constitute evidence of consciousness of guilt and a coordinated, concerted effort by Defendants, and each of them, to defeat a legitimate governmental investigation -- the precise conduct that aggravated damages are designed to deter. The coordination required to maintain five mutually consistent false representations across a single Position Statement cannot be the product of individual supervisory error -- it is evidence of institutional concert and consciousness of guilt. Each false or contradictory representation in Defendants' Position Statement is independently pretextual, and the collective pattern of shifting, inconsistent, and self-contradicting justifications is itself direct evidence that no legitimate reason for any adverse action against Plaintiff ever existed.

**FIRST CAUSE OF ACTION**

**FMLA INTERFERENCE**

(29 U.S.C. § 2615(a)(1))

(Against County of Contra Costa, Contra Costa County Sheriff's Office, and Does 1-100)

39. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

40. At all relevant times, Plaintiff was an eligible employee entitled to FMLA leave under 29 U.S.C. § 2612 and Defendants were covered employers under 29 U.S.C. § 2611. Plaintiff provided timely and adequate notice beginning July 13, 2021. Defendants interfered with Plaintiff's FMLA rights on at least six separate occasions: (a) September 21, 2021 -- Sgt. Parrish denied Emergency Sick Leave in direct violation of 29 C.F.R. § 825.303, which prohibits denial of unforeseeable FMLA leave where the employee provided notice as soon as practicable under the circumstances; (b) December 1, 2021 -- Lt. Hernandez denied leave citing vacation sign-ups; (c) December 3, 2021 -- Lt. Hernandez denied leave claiming lack of formal approval; (d) December 9, 2021 -- Lt. Hernandez denied leave falsely claiming no ARF was submitted; (e) August 23, 2022 -- Sgt. Filice pressured Plaintiff to substitute paid leave for unpaid FMLA; and (f) December 22, 2023 -- Sgt. Filice demanded Plaintiff perform work duties while on physician-ordered medical leave.

41. As a direct and proximate result, Plaintiff suffered lost wages, loss of benefits, loss of career, loss of future earning capacity, emotional distress, physical injury, and other damages to be proven at trial. Plaintiff seeks liquidated damages and attorney's fees as authorized under 29 U.S.C. § 2617. Liquidated damages are mandatory absent a showing of good faith -- a showing Defendants cannot make given six documented acts of interference across two leave periods.

**FMLA RETALIATION**

(29 U.S.C. § 2615(a)(2))

(Against County of Contra Costa, Contra Costa County Sheriff's Office, and Does 1-100)

42. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

43. Plaintiff engaged in protected activity by asserting FMLA rights, taking approved FMLA leave, and reporting FMLA violations to supervisors and union representatives. Defendants retaliated through: (a) threatening sick time abuse charges exactly six days before FMLA leave; (b) stripping Plaintiff of seniority-based module assignments immediately upon return; (c) assigning Plaintiff to high-risk detention assignments (B and C Modules) upon return from FMLA leave, corroborated by independent written communications from fellow deputies; (d) creating conditions so hostile Plaintiff nearly resigned; (e) dismissing his formal safety complaints fifteen days before a foreseeable career-ending attack; and (f) demanding work duties and conducting an intimidating home welfare check during protected medical leave.

44. Causal connection is established by temporal proximity between FMLA leave and retaliatory assignment changes; Sgt. Filice's own admission the reassignment was "just what I decided to do"; independent third-party corroboration; and stark disparity in treatment compared to Caucasian colleagues. As a direct and proximate result, Plaintiff suffered lost wages, loss of benefits, physical injury, emotional distress, and loss of career. Plaintiff seeks liquidated damages and attorney's fees under 29 U.S.C. § 2617, to the extent Plaintiff retains counsel or as otherwise permitted by law, and punitive damages against individual Doe Defendants under California Civil Code § 3294 for the pre-dated disciplinary file, the three false denials, the dangerous module assignments, the armed welfare check, and the fraudulent sworn affidavit -- each a deliberate act carried out by named supervisors with full knowledge of Plaintiff's

protected status.

**CFRA INTERFERENCE AND RETALIATION**

(California Government Code § 12945.2)

(Against Contra Costa County)

45. Plaintiff incorporates all preceding paragraphs as though fully set forth herein. At all relevant times, Plaintiff was entitled to CFRA leave and Defendants were covered employers. Each FMLA-qualifying leave request described herein was simultaneously a CFRA-qualifying request, as each arose from Plaintiff's own serious health condition or that of a qualifying family member under Government Code § 12945.2. Defendants interfered with and retaliated against Plaintiff's CFRA rights through the same conduct described above. Plaintiff was not reinstated to the same or comparable position upon return from leave as required by Government Code § 12945.2(a) and the applicable MOU. Plaintiff was entitled to return to A and E Modules consistent with his seniority; instead he was assigned to the facility's most dangerous modules. As a direct and proximate result, Plaintiff suffered lost wages, loss of career, emotional distress, physical injury, and loss of future earning capacity, to be proven at trial.

**SECOND CAUSE OF ACTION**

**FEHA RETALIATION, HARASSMENT, AND CONSTRUCTIVE TERMINATION**

(California Government Code §§ 12940(h), 12940(j))

(Against County of Contra Costa, Contra Costa County Sheriff's Office, and Does 1-100)

46. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

47. FEHA prohibits retaliation against employees who oppose unlawful employment practices or file complaints. Plaintiff engaged in protected activity by: reporting

discriminatory treatment (Gov. Code § 12940(h)); taking FMLA and CFRA leave (29 U.S.C. § 2615; Gov. Code § 12945.2); filing complaints with the EEOC (42 U.S.C. § 2000e-5) and CRD (Gov. Code § 12965); and disclosing Consent Decree violations to supervisory authority (Labor Code § 1102.5(b)). Defendants retaliated through retaliatory module assignments, creation of hostile working conditions, post-injury harassment, an intimidating home welfare check by armed deputies, and deliberate manipulation of Plaintiff's separation date. Because these retaliatory acts are sufficiently related and form a continuous pattern culminating in Plaintiff's medical separation on June 23, 2025, the continuing violation doctrine under California law renders all acts within the pattern timely under FEHA's one-year limitations period, with the limitations period running from the last act in the series rather than the first.

48. Plaintiff, an Asian/Pacific Islander male, was subjected to a sustained pattern of disparate treatment based on race and in retaliation for protected activity, including: demeaning comments about his family and circumstances surrounding the birth of his child; dangerous solo module assignments; a pre-dated sick time folder and abuse threat immediately before FMLA leave; work demands and armed welfare check during medical leave; and a fraudulent separation date maintained in a sworn affidavit after independent correction. This conduct was severe and pervasive, carried out by supervisors with direct authority over Plaintiff's assignments and employment status, and gives rise to individual supervisor liability under Government Code § 12940(j). Because the harassing conduct was carried out by supervisors with direct authority over Plaintiff's employment, Defendants County of Contra Costa and Contra Costa County Sheriff's Office are strictly liable for that harassment under Government Code § 12940(j)(1) without any showing of knowledge or fault. Individual supervisors who engage in retaliatory or harassing conduct are personally liable and are not shielded by public entity immunity under Government Code § 818. Plaintiff seeks punitive damages against each individual supervisor under Civil Code § 3294 for conduct constituting malice and

oppression.

49. Defendants constructively terminated Plaintiff by deliberately creating working conditions so intolerable that a reasonable person in Plaintiff's position would feel compelled to leave -- interfering with his FMLA leave, systematically disregarding his seniority in assignments, threatening him with punitive aciton immediately before FMLA leave, dismissing his safety complaints, maintaining a sustained retaliatory campaign over multiple years, and ultimately placing him in conditions that resulted in a career-ending attack. Constructive discharge is established where an employer deliberately creates or knowingly permits working conditions so intolerable that a reasonable employee would feel compelled to resign or be forced out. The standard is objective: whether a reasonable person in Plaintiff's position would find the conditions intolerable -- not whether Plaintiff subjectively endured them as long as possible. Plaintiff's own documented near-resignation on February 16, 2023 -- writing that Defendants had pushed him "almost to the point" of leaving -- is direct contemporaneous evidence that the conditions had crossed that threshold months before his career-ending injury. The County's corrective staffing change after the May 11, 2023 attack confirms the conditions were not only foreseeable but objectively unreasonable.

50. As a direct and proximate result, Plaintiff suffered lost wages, loss of career, severe emotional distress, physical injury, and all damages available under FEHA. Plaintiff seeks punitive damages against individual Defendants under California Civil Code § 3294.

**THIRD CAUSE OF ACTION**

**WHISTLEBLOWER RETALIATION**

(California Labor Code § 1102.5)

(Against County of Contra Costa, Contra Costa County Sheriff's Office, and Does 1-100)

51. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

52. Plaintiff engaged in protected whistleblowing by: reporting unpaid overtime; reporting unreimbursed sick time; reporting meal break violations; reporting Consent Decree staffing violations to Lt. Holder, Sgt. Vallis, and union representative Lt. Holland on April 26, 2023; and filing formal complaints with the EEOC and CRD. Plaintiff's April 26, 2023 disclosure constituted reporting of a court order violation to a supervisory authority, expressly protected under Labor Code § 1102.5(b).

53. Defendants, and each of them acting in concert, retaliated through dismissal of Plaintiff's safety complaint, retaliatory module assignments, and the career-ending attack that followed fifteen days after Plaintiff's formal report. Each Defendant who witnessed, enabled, ratified, or failed to interrupt this retaliation is individually and jointly liable for its full consequences. Under Labor Code § 1102.6, once Plaintiff demonstrates by a preponderance of the evidence that his protected whistleblower activity was a contributing factor in any adverse employment action, the burden shifts to Defendants to prove by clear and convincing evidence that the same action would have been taken regardless -- a burden Defendants cannot satisfy given the fifteen-day gap between Plaintiff's formal safety complaint and his career-ending injury, the post-attack corrective staffing that confirmed the complaint's legitimacy, and the documentary record of shifting, inconsistent justifications offered by Defendants across multiple proceedings. The County's post-attack corrective staffing is a binding institutional admission confirming both the legitimacy of Plaintiff's report and the foreseeable nature of the harm -- the strongest possible corroboration of a whistleblower's complaint. As a direct and proximate result, Plaintiff suffered lost wages, loss of career, physical injury, emotional distress, and other damages to be proven at trial. Individual supervisors who engage in retaliatory conduct with actual knowledge of the employee's protected status are personally liable and are not shielded by public entity immunity. Plaintiff seeks punitive

damages against each individual Doe Defendant under California Civil Code § 3294.

**FOURTH CAUSE OF ACTION**

**RACIAL DISCRIMINATION, DISPARATE TREATMENT, AND PATTERN OF SELECTIVE ENFORCEMENT**

(Gov. Code § 12940(a); 42 U.S.C. § 1981)

(Against Contra Costa County)

54. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

55. Plaintiff's race and protected class status as an Asian/Pacific Islander male was a motivating factor in Defendants' adverse employment decisions. Defendants treated Plaintiff less favorably than similarly situated Caucasian deputies with respect to daily assignments, seniority recognition, leave accommodation, and policy enforcement. Documentary evidence includes: assignment rosters from November 2022 and January 2023 confirming that all deputies ranked above Plaintiff in seniority were Caucasian with seniority-consistent assignments while Plaintiff's seniority and skill were systematically disregarded; a written communication from a fellow deputy confirming differential treatment of a similarly situated Caucasian deputy; and the County's post-attack corrective staffing that restored safe conditions never provided to Plaintiff. Outside of Plaintiff's participation in protected activity, Plaintiff 's Asian/Pacific Islander identity was the only material difference between himself and the Caucasian colleagues whose seniority rights were consistently honored, establishing racial identity as a motivating factor in Defendants' adverse decisions. Race was a substantial motivating factor in Defendants' decision to systematically disregard Plaintiff's seniority, as evidenced by the consistent pattern of preferential treatment afforded to Caucasian deputies across multiple shifts and supervisors.

56. Defendants' conduct also violates 42 U.S.C. § 1981, which prohibits racial

discrimination in the making and enforcement of employment contracts. Defendants' racially motivated interference with Plaintiff's assignment rights, leave rights, and seniority constitutes intentional racial discrimination independently actionable under federal law. As a direct and proximate result, Plaintiff suffered lost wages, loss of career, emotional distress, physical injury, and other damages. Plaintiff seeks punitive damages against individual Doe Defendants under California Civil Code § 3294.

**FIFTH CAUSE OF ACTION**

**NEGLIGENCE AND WILLFUL NEGLIGENCE**

(Against County of Contra Costa and Contra Costa County Sheriff's Office)

57. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

58. Defendants owed Plaintiff a duty to provide a safe workplace and act upon reported safety hazards, arising under California Labor Code §§ 6400, 6401, and 6402. The County of Contra Costa is additionally liable under the doctrine of respondeat superior and Government Code § 815.2 for each act of negligence, retaliation, and intentional infliction of emotional distress committed by its supervisory employees within the course and scope of their employment. By failing to investigate, discipline, or correct the retaliatory and negligent conduct of its supervisory employees after receiving actual notice through Plaintiff's complaints, the County ratified that conduct -- adopting it as institutional policy and exposing itself to punitive damages under Civil Code § 3294(b). Defendants breached this duty by: failing to maintain staffing levels required by the active federal Consent Decree; assigning Plaintiff to work the facility's highest-risk modules alone without adequate backup; dismissing Plaintiff's formal safety complaint on April 26, 2023 with full knowledge of the dangerous conditions; and taking no corrective action in the fifteen days before the foreseeable career-ending attack on May 11, 2023. Defendants' conduct constitutes deliberate indifference to a known, serious risk of harm --

the County had actual and constructive knowledge of the dangerous single-deputy module conditions through Plaintiff's formal complaint, through the Consent Decree compliance monitoring process, and through Lt. Holder's own acknowledgment during the April 26, 2023 meeting that staffing was inadequate, yet consciously disregarded that risk for fifteen days until the foreseeable attack occurred.

59. Defendants' failure to comply with the Consent Decree's sworn staffing obligations constitutes negligence per se under California Evidence Code § 669. Plaintiff is precisely within the class of persons the Consent Decree was designed to protect, and his career-ending injury is exactly the type of harm it was designed to prevent. Defendants' diversion of $2 million in CARES Act funds designated to hire twenty-four new MDF deputies -- to other assignments instead -- constitutes an independent act of willful negligence made with actual knowledge of the foreseeable harm to deputies including Plaintiff -- elevating Defendants' liability from ordinary negligence to willful misconduct under California law.

60. Defendants' deliberate, targeted acts also fall within the intentional tort exception to workers' compensation exclusivity, which preserves civil liability where employer conduct is deliberate, targeted, and exceeds the inherent risks of employment: dismissing Plaintiff's formal safety complaint with actual knowledge of dangerous conditions fifteen days before a foreseeable attack; making a targeted retaliatory assignment of Plaintiff specifically to high-risk detention assignments (B and C Modules) rather than applying a universal staffing policy; and diverting Consent Decree staffing funds with actual knowledge of the foreseeable structural harm to Plaintiff and similarly situated deputies. Defendants knew, or in the exercise of reasonable diligence should have known, that single-deputy coverage of B and C Modules during simultaneous inmate activities made serious physical injury to the assigned deputy substantially certain to occur -- a standard that satisfies the intentional tort exception to workers' compensation exclusivity under

California law. As a direct and proximate result, Plaintiff suffered multiple career-ending injuries on May 11, 2023, and all resulting economic, physical, and emotional damages to be proven at trial.

**SIXTH CAUSE OF ACTION**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

(Against Does 1 through 100, inclusive)

61. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

62. Individual Doe Defendants engaged in extreme and outrageous conduct with intent to cause, or in reckless disregard of the probability of causing, severe emotional distress to Plaintiff. This conduct exceeded all bounds of decency tolerated by a civilized society and includes: (a) dispatching two armed deputies to Plaintiff's personal residence while on physician-ordered medical leave, for the stated purpose of "getting eyes on" Plaintiff -- an abuse of law enforcement authority against a recovering injured employee; (b) presenting a pre-dated sick time folder with abuse threats exactly six days before Plaintiff's scheduled FMLA leave, with the date stamp establishing deliberate premeditation; (c) dismissing Plaintiff's formal safety complaint with actual knowledge of dangerous conditions, fifteen days before a foreseeable career-ending attack; (d) assigning Plaintiff to high risk detention assignments (B and C Modules) alone as part of a sustained retaliatory pattern while simultaneously blocking formal grievance channels; (e) demanding work duties while Plaintiff was on physician-ordered medical leave; (f) maintaining a false separation date in a sworn affidavit after an independent governmental body had corrected it, without ever notifying Plaintiff; (g) using two Workers' Compensation depositions to extract information about Plaintiff's pending CRD complaint over his explicit objections; (h) initiating a Pitchess Motion during deposition as litigation intimidation; (i) making demeaning comments about Plaintiff's family,

unborn child, marital status, and healthcare decisions in the workplace; and (j) coordinating adverse actions across multiple supervisory roles while simultaneously holding union representative obligations toward Plaintiff.

63. As a direct and proximate result of this deliberate institutional campaign to punish, silence, and eliminate a deputy who exercised his legal rights, Plaintiff suffered severe emotional distress including post-traumatic stress, anxiety, depression, humiliation, and physical manifestations of emotional harm. Individual Doe Defendants acted with malice, oppression, and fraud within the meaning of California Civil Code § 3294, entitling Plaintiff to punitive damages against each individually.

**SEVENTH CAUSE OF ACTION**

**FAILURE TO PREVENT HARASSMENT, DISCRIMINATION, AND RETALIATION**

(California Government Code § 12940(k))

(Against County of Contra Costa and Contra Costa County Sheriff's Office)

64. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

65. Government Code § 12940(k) requires employers to take all reasonable steps to prevent harassment, discrimination, and retaliation. Defendants failed this duty by: taking no corrective action despite Plaintiff's direct complaints about unfair assignments; taking no protective action in the fifteen days between Plaintiff's formal safety complaint and his career-ending attack; allowing union representative Lt. Holland to witness Plaintiff's protected whistleblowing disclosure and file no grievance on his behalf; and maintaining no effective complaint, investigation, or remediation procedure capable of interrupting the sustained retaliatory campaign Plaintiff experienced over multiple years. This systemic failure is confirmed by four independent institutional failures: no documented

investigation of Plaintiff's assignment complaints; no formal grievance filed after the April 26, 2023 meeting; no action taken on the safety complaint in the fifteen days before the attack; and continued maintenance of the same unsafe single-deputy module conditions for years after Plaintiff's injury. Once Plaintiff establishes this pattern of institutional failure, the burden shifts to Defendants to articulate a legitimate, non-discriminatory reason for each failure to act -- a burden Defendants cannot satisfy on this record.

66. As a direct and proximate result, Plaintiff suffered career-ending physical injury, lost wages, loss of future earning capacity, severe emotional distress, and all other damages to be proven at trial.

## EIGHTH CAUSE OF ACTION

## INJUNCTIVE AND DECLARATORY RELIEF

(Cal. Code Civ. Proc. §§ 526, 1060)

(Against County of Contra Costa, Contra Costa County Sheriff's Office, and Does 1 through 100)

67. Plaintiff incorporates all preceding paragraphs as though fully set forth herein. An actual and justiciable controversy exists between Plaintiff and Defendants within the meaning of California Code of Civil Procedure § 1060.

68. Plaintiff seeks a judicial declaration that: (a) Defendants violated Plaintiff's rights under 29 U.S.C. § 2615 (FMLA); (b) Defendants violated Government Code § 12945.2 (CFRA); (c) Defendants violated Government Code §§ 12940(a), 12940(h), 12940(j), and 12940(k) (FEHA); (d) Defendants violated California Labor Code § 1102.5 (Whistleblower); and (e) the operative date of Plaintiff's separation is June 23, 2025, as corrected by CCCERA, not February 19, 2025, and that this declaration is binding on

CCCERA and all related retirement and benefits systems.

69. Plaintiff seeks preliminary and permanent injunctive relief pursuant to California Code of Civil Procedure § 526 requiring Defendants to: (a) correct all agency records to reflect the corrected separation date of June 23, 2025; (b) implement mandatory annual FEHA, FMLA, CFRA, and whistleblower training for all supervisory personnel; (c) establish effective complaint and investigation procedures; (d) post notices informing employees of their statutory rights; (e) impose meaningful discipline on supervisors who violate employees' rights; (f) establish a dedicated protected leave request system requiring written (via email) supervisory confirmation of all FMLA, CFRA, and other protected leave dates upon submission, to be maintained in each employee's personnel file; (g) Implement Policy requiring a minimum of two deputies assigned to each module during all inmate free time hours, excluding the worker module. (h) Require mandatory annual training for all Union Representatives on their duty and obligations to members, training to include FMLA, CFRA, FEHA, and Whistleblower disclosures. (i) Reinstate or implement a structured weekly reduced-activity protocol at the Martinez Detention Facility, including a minimum of one designated day per week during which inmate recreational activity is suspended throughout the facility, consistent with the county's own staffing obligations under the consent decree and all applicable inmate rights, to reduce the risk of inmate-on-deputy violence during periods of single-deputy module coverage, allowing a dedicated time for complex and time consuming duties such as medical blood draws, facility maintenance, thorough facility safety inspections, and inmate services (schools, bible study).

70. Monetary damages cannot undo the chilling effect on deputies who witnessed Plaintiff's treatment, and cannot prevent the next career-ending attack. Absent injunctive relief, Plaintiff and similarly situated employees will continue to suffer irreparable harm. The documented continuation of single-deputy module assignments and mandatory

forced overtime demonstrates that without court intervention, the conditions that ended Plaintiff's career remain operational today. As of September 2025, the MDF was mandating approximately 60 hours of forced overtime per deputy per month, and that number, as documented in email communications in Plaintiff's possession, is now reported to be closer to 90 hours -- materially identical or worse conditions than those that ended Plaintiff's career.

## MITIGATION

71. Plaintiff's career-ending physical injuries, sustained on May 11, 2023, are documented in medical records and Workers' Compensation proceedings and have prevented Plaintiff from pursuing alternative law enforcement employment or any employment requiring physical, psychological, mental, and emotional demands comparable to his prior position. Plaintiff has taken all reasonable steps to mitigate his economic damages consistent with his physical limitations resulting from those career-ending injuries.

## PARASITIC DAMAGES NOTICE

72. To the extent any cause of action is subject to a Government Claims Act bar as to Contra Costa County as a public entity, Plaintiff expressly pleads that all emotional distress damages, physical injury damages, dignitary harm, loss of enjoyment of life, anxiety, depression, and humiliation are independently recoverable as parasitic damages through Plaintiff's exempt causes of action, including: FMLA and CFRA Interference and Retaliation (First Cause of Action); FEHA Retaliation, Harassment, and Constructive Termination (Second Cause of Action); Whistleblower Retaliation (Third Cause of Action); Racial Discrimination and Disparate Treatment (Fourth Cause of Action); Negligence and Willful Negligence (Fifth Cause of Action); Intentional Infliction of

Emotional Distress (Sixth Cause of Action); Failure to Prevent (Seventh Cause of Action); and Injunctive and Declaratory Relief (Eighth Cause of Action).

## PRAYER FOR RELIEF

**WHEREFORE, Plaintiff Allen De La Cruz prays for judgment against Defendants as follows:**

1. Compensatory damages for lost wages, loss of benefits, loss of future earning capacity, and all economic losses caused by Defendants' unlawful conduct, in an amount to be proven at trial;

2. Damages for pain and suffering and medical expenses, past and future, arising from the May 11, 2023 inmate attack caused by Defendants' negligence and willful failure to act upon Plaintiff's safety reports, recoverable as parasitic damages through Plaintiff's exempt statutory causes of action;

3. Damages for severe emotional distress, humiliation, anxiety, depression, dignitary harm, and loss of enjoyment of life caused by Defendants' extreme and outrageous conduct and sustained retaliatory campaign;

4. Liquidated damages equal to lost wages and benefits as authorized under 29 U.S.C. § 2617;

5. Reinstatement of all benefits, health coverage, and retirement accrual for the period during which Plaintiff was wrongfully deprived due to Defendants' use of the false separation date of February 19, 2025, through the corrected separation date of June 23, 2025, as determined by CCCERA, including actuarial correction of Plaintiff's retirement

service credit and any lost cost-of-living adjustments attributable to the false separation date;

6. Punitive damages against Doe Defendants 1 through 100 for willful, malicious, and oppressive conduct;

7. Pre-judgment interest pursuant to California Civil Code § 3287 and post-judgment interest at the legal rate;

8. Attorney's fees and costs of suit as authorized by the FMLA, FEHA, and California Labor Code § 1102.5;

9. Injunctive and declaratory relief as set forth above; and

10. Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff Allen De La Cruz hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: 8/3/2026

**ALLEN DE LA CRUZ**

2730 W.Tregallas Rd.
Antioch, CA 94509
(925) 698-6858

Plaintiff, Pro Se

**CERTIFICATE OF SERVICE**

I hereby certify that on the date indicated above, I caused a true and correct copy of the foregoing Complaint for Damages to be served upon all parties and counsel of record by [METHOD OF SERVICE], addressed as follows:

Clerk of the Board of Supervisors
1025 Escobar Street,1st Floor
Martinez, CA 94553

**[REMAINING DEFENDANTS' COUNSEL AND ADDRESSES]**

ALLEN DE LA CRUZ, Plaintiff, Pro Se

**VERIFICATION**

I, Allen De La Cruz, declare under penalty of perjury under the laws of the State of California that I am the Plaintiff in the above-entitled action, that I have read the foregoing Complaint for Damages, and that the facts alleged therein are true and correct to the best of my knowledge, information, and belief.

Executed on 8/3/2026, at Antioch, California.



**ALLEN DE LA CRUZ**

Plaintiff, Pro Se